# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER IDs 100027405876554 and 100009430730909 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC., HEADQUARTERED AT 1601 WILLOW ROAD, MENLO PARK, CA 94025 | Case No. 3:18-MJ-2187 <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John Williams, Jr., an Investigator with the Knoxville Police Department (KPD) Internet Crimes against Children (ICAC) Task Force and being a Task Force Officer with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and state the following:

1.    I make this affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs (UID) that are stored at premises owned, maintained, controlled, or operated by Facebook Inc. (Facebook), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user IDs.

2.    I have been employed with KPD since August 14, 2000. Since December 2012, I have been assigned to KPD's ICAC Task Force as an undercover online investigator. The KPD-

ICAC Task Force is responsible for investigating and enforcing federal criminal statutes involving the sexual exploitation of children under Title 18, United States Code, Chapters 110 and 117, including Sections 2251, 2252, 2252A, and 2422(b). I have acquired experience in these matters through specialized training and everyday work related to these types of investigations.

3.    As a federal task force officer, I am authorized to investigate violations of the laws of the United States, and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.    The information contained within the affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience, and/or information related to me by other law enforcement officers and/or agents. Since this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning the investigation. I have received training in the area of sexual exploitation of minors, including the enticement of minors by adults to engage in sexual activity.

5.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2251(a), 2252(a)(2), 2252A(a)(5)(B), and 2422(b) have been committed by TYWAN MONTREASE SYKES (hereinafter "Sykes"). There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes and contraband or fruits of these crimes, as described in Attachment B.

2

## PROBABLE CAUSE

6.      In support of the Application, I hereby incorporate by referenced the facts set forth in my prior affidavit in support of a Criminal Complaint and arrest warrant in Case No. 3:18-MJ-2178 (EDTN), a copy of which is attached hereto as Exhibit 1.

7.      According to information obtained from Facebook, on October 6, 2018, between 6:57:51pm PDT and 7:09:12pm PDT, the following communication occurred between Sykes and M.D., a female child born in January 2003. This communication indicates prior sexual contact between Sykes and M.D.:

- ▪ [M.D. (100009430730909) - 10/06/2018 6:57:51pm PDT]

  when did we start talking,? that night u picked me up from work and we had sex at your house for the first time

- ▪ [Ty Sykes (100027405876554) - 10/06/2018 6:58:31pm PDT]

  Why you didn't think I would

- ▪ [M.D. (100009430730909) - 10/06/2018 6:58:59pm PDT]

  idk bc my age

- ▪ [M.D. (100009430730909) - 10/06/2018 6:59:24pm PDT]

  I just didn't kno if you would be comfortable with it

- ▪ [Ty Sykes (100027405876554) - 10/06/2018 7:09:12pm PDT]

  I'm sort of not bit you seem way older and thats what did it for me

8.      According to information obtained from Facebook, on October 6, 2018, between 7:49:24pm PDT and 7:51:15pm PDT, the following communication occurred between Sykes and M.D., a female child born in January 2003. This communication indicates Sykes knew that M. D. was a minor.

3

- [Ty Sykes (100027405876554) - 10/06/2018 7:49:24pm PDT]

  If I explain all the reason why you different it would take me to your 18th birthday to finish

- [M.D. (100009430730909) - 10/06/2018 7:49:54pm PDT]

  well just explain some

- [M.D. (100009430730909) - 10/06/2018 7:50:35pm PDT]

  im telling u the littlest things make me happy. u just calling me gorgeous makes me happy

- [Ty Sykes (100027405876554) - 10/06/2018 7:51:15pm PDT]

  You beautiful you sexy I see a lot of potential in you your smile I know you smart if you would just listen and quit thinking everybody trying to tell you what to do and you don't have to listen cuz you 15 now I'm 40 something and I still listen to people tell me what to do because you can always learn something from somebody else no matter if it's the wrong thing you can learn not to do what they doing they just don't make a different or nothing dating learning stuff or anything and of course you got pretty feet and good head and wet pussy

9.    According to information obtained from Facebook, on October 6, 2018, between 6:31:57pm PDT and 6:57:22pm PDT, the following communication occurred between Sykes and M.D., a female minor born in January 2003, via Facebook Messenger, a messaging feature available to users of the social media platform Facebook.  This communication indicates Sykes requested that M.D. take pictures of herself while in the shower to send to him and that

4

subsequently M.D. took and sent several images of her breasts and vagina to Sykes through the use of Facebook Messenger.

- [M.D. (100009430730909) - 10/07/2018 6:31:57pm PDT]

  Okay baby well ima take a shower

- [Ty Sykes (100027405876554) - 10/07/2018 6:45:21pm PDT]

  Okay call me when you get out are you going to send me some pictures while you're in the shower all soaking wet even though you already wet wet

- [M.D. (100009430730909) - 10/07/2018 6:51:50pm PDT]

  M.D. (100009430730909) sent an image reported as apparent child exploitation image (CEI): CT 41735964

- [M.D. (100009430730909) - 10/07/2018 6:51:57pm PDT]

  M.D. (100009430730909) sent an image reported as apparent CEI: CT 41735964

- [M.D. (100009430730909) - 10/07/2018 6:52:00pm PDT]

  M.D. (100009430730909) sent an image reported as apparent CEI: CT 41735964

- [M.D. (100009430730909) - 10/07/2018 6:52:05pm PDT]

  M.D. (100009430730909) sent an image reported as apparent CEI: CT 41735964

- [Ty Sykes (100027405876554) - 10/07/2018 6:56:38pm PDT]

  Ugh you should let me come see you when everybody go to bed or something please

- [M.D. (100009430730909) - 10/07/2018 6:57:22pm PDT]

5

Well they have an alarm system and it makes a noise when u open a door

10.     On October 16, 2018, I submitted a request to Facebook to preserve all content related to Facebook UID 100027405876554 and UID 100009430730909 Facebook accounts.

11.     On October 18, 2018, Sykes was arrested pursuant to an arrest warrant in Case No. 3:18-MJ-2178 (EDTN).

## ADDITIONAL INFORMATION PERTAINING TO FACEBOOK

12.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

13.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

14.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account

6

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

15.    Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

16.    Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

17.    Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when he or she uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link

7

to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

18. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

19. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

20. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

21. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

22. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

8

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

23.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

24.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

25.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

26.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

9

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

10

27.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

28.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

29.     Based on the forgoing, I request that the Court issue the proposed search warrant.

30.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

31.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

Respectfully submitted,

_____

John M. Williams, Jr.
Investigator
Knoxville Police Department
Internet Crimes Against Children Unit


Subscribed and sworn to before me on this ___1___ day of November, 2018

_____
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the Facebook users

**100027405876554 and 100009430730909** that is stored at premises owned, maintained,

controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including **for user IDs 100027405876554** and **100009430730909,** including full name, user identification numbers, birth dates, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities **from August 1, 2018, to October 18, 2018**;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have the users tagged in them **from August 1, 2018, to October 18, 2018**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user **from August 1, 2018, to October 18, 2018**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account **from August 1, 2018, to October 18, 2018**;

(m) The types of service utilized by the user;

2

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **14 DAYS** of service of this warrant.

3

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2251(a), 2252(a)(2), 2252A(a)(5)(B), and 2422(b) involving TYWAN MONTREASE SYKES since August 1, 2018, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)  Evidence of the communications between Tywan Montrease Sykes and M.D.;

(b)  Evidence of the communications between Tywan Montrease Sikes and other Facebook users pertaining to M.D.;

(c)  Evidence of communications between M.D. and other Facebook users pertaining to Tywan Montrease Sykes;

(d)  Evidence of the digital files, including image files, video files, and audio files, relating to the crimes under investigation;

(e)  Evidence indicating how and when the Facebook accounts were accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Facebook account owner;

(f)  Evidence indicating the Facebook account users' intent as it relates to the crimes under investigation; and

(g)  The identity of the persons who created and used the accounts, including records that help reveal the whereabouts of such persons.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b.     such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                          Signature

EXHIBIT

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA    )
                               )
   v.                     )    Case No. 3:18-MJ-ᘀ178
                               )
TYWAN MONTREASE SYKES   )

**<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>**

     I, John Williams, Jr., an Investigator with the Knoxville Police Department (KPD)

Internet Crimes against Children (ICAC) Task Force and being a Task Force Officer with the

United States Department of Homeland Security (DHS), Immigration and Customs Enforcement

(ICE), Homeland Security Investigations (HSI), being duly sworn, deposes and states the

following:

     1.    I have been employed with the KPD since August 14, 2000.  Since December

2012, I have been assigned to the KPD's ICAC Task Force as an undercover online investigator.

The KPD-ICAC Task Force is responsible for investigating and enforcing federal criminal

statutes involving the sexual exploitation of children under Title 18, United States Code, Chapter

110, including, without limitation, section 2422(b).  I have acquired experience in these matters

through specialized training and everyday work related to these types of investigations.

I have completed the following training:

- 2000 KPD Training Academy Recruit Class A;
- 2007 KPD Instructor Development;
- 2007 KPD Field Training Officer School;
- 2013 Basic Computer Skills for Law Enforcement Training Program;
- 2013 Undercover Chat Investigations in Raleigh, NC;

- 2013 ICAC Investigative Techniques in Jacksonville, FL;
- 2013 Commercial Sexual Exploitation of Children in Nashville, TN;
- 2014 Regional Law Enforcement Training on Child Exploitation in Atlanta, GA;
- 2014 Child Protection System and Basic Gnutella and e-Mule Peer-to-Peer computer training in Lynchburg, VA;
- 2014 Basic Peer-to-Peer Investigations, Fox Valley Technical College;
- 2014 e-Mule Peer-to-Peer training, Fox Valley Technical College;
- 2014 ARES Peer-to-Peer training, Fox Valley Technical College;
- 2014 BitTorrent Peer-to-Peer training, Fox Valley Technical College in Denver, CO;
- 2015 e-Phex Peer-to-Peer training, Fox Valley Technical College;
- 2015 Advanced Forensics on Child Pornography Examinations in Nashville, TN;
- 2016 United States Secret Service BICEP Computer Forensic Training in Hoover, AL;
- 2016 Mobilyze Triage by Black Bag Technologies Certification, Atlanta, GA;
- 2017 Freenet Peer-to-Peer training, Fox Valley Technical College in Atlanta, GA; and
- 2017 Homeland Security Investigations Task Force Officer Training Course in Knoxville, TN.

2.      As a federal task force officer, your affiant is authorized to investigate violations of the laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.      The information contained within the affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience, and/or information related to me by other law enforcement officers and/or agents. Since this affidavit is being submitted for the limited purpose of a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning the investigation. I make this affidavit in support of a complaint and warrant for the arrest of TYWAN MONTREASE SYKES for attempting to use a facility or means of interstate or foreign commerce to knowingly persuade, induce, entice or coerce an individual who had not attained the age of 18 years to engage in

2

sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(a). I have received training in the area of sexual exploitation of minors, including the enticement of minors by adults to engage in sexual activity. Except as noted, all of the information contained in this affidavit is either known to me personally or has been told to me by other law enforcement officials.

4.      Since October 16, 2018, I have been investigating an individual identified as Tywan Montrease Sykes, a male born July 18, 1975. My investigation has revealed that Sykes currently resides at 113 Adkins Way, Louisville, TN 37777. Sykes is a registered sex offender in the State of Tennessee and has been convicted of statutory rape on March 4, 1997, aggravated statutory rape on December 12, 2008, and violation of sex offender registry on March 25, 2016.

5.      On October 16, 2018, I received a Cybertip #41757406 from the National Center for Missing and Exploited Children (NCMEC). The Cybertip indicated a current or imminent risk to a 15 year-old female child.

6.      NCMEC reported that a 43-year-old male appeared to be enticing a 15-year-old female to produce and send apparent child exploitation images and also engage in certain sexual activity via private messages. Conversation indicated that the suspect and the minor may have already met to engage in sexual activity and appear to be living within close proximity to each other.

7.      Facebook provided conversations between a username Ty Sykes (UID 100027405876554) Facebook account and a username M.D. (UID1000094307***** (partially redacted)) Facebook account. The Facebook registration date of birth for Ty Sykes was provided and, I have confirmed that is Tywan Montrease Sykes's date of birth. Sykes had also reported

3

Case 3:18-mj-02178-HBG   Document 1   Filed 10/18/18   Page 4 of 7   PageID #: 4
Case 3:18-mj-02187-HBG   Document 2   Filed 11/01/18   Page 22 of 25   PageID #: 28

that Facebook account to his sex offender supervision officer with the Blount County Sheriff's Office as belonging to Sykes.

8.    According to the Facebook Cybertip, on October 3, 2018, between 7:47:23pm PDT and 8:02:22pm PDT, the following communication occurred between Tywan Montrease Sykes and M.D., a female minor born in January 2003.

- [Ty Sykes (100027405876554) - 10/03/2018 7:47:23pm PDT]

    I'm really horny

- [Ty Sykes (100027405876554) - 10/03/2018 7:47:34pm PDT]

    Just let me stick it in

- [M.D. (1000094307*****) - 10/03/2018 7:47:48pm PDT]

    and u wouldn't care? & I kno i want you to baby. but I can't do that tonight

- [M.D. (1000094307*****) - 10/03/2018 7:48:23pm PDT]

    next week when im at my mimis and can leave we can fuck

- [Ty Sykes (100027405876554) - 10/03/2018 7:53:21pm PDT]

    I promise I just want to stick it in and out just once

- [Ty Sykes (100027405876554) - 10/03/2018 7:53:26pm PDT]

    Ok nvm

- [M.D. (100009430*****) - 10/03/2018 8:01:53pm PDT]

    u gotta eat me out, since I gave u head

- [M.D. (1000094307*****) - 10/03/2018 8:02:22pm PDT]

    not tn but soon

9.    Further information provided by Facebook showed the Ty Sykes (UID 100027405876554) account was registered with the name of Tywan Sykes and phone number of

4

Case 3:18-mj-02178-HBG   Document 1   Filed 10/18/18   Page 5 of 7   PageID #: 5
Case 3:18-mj-02187-HBG   Document 2   Filed 11/01/18   Page 23 of 25   PageID #: 29

+18654432104. This phone number is the number Sykes had provided to his sex offender supervision officer with the Blount County Sheriff's Office to use to contact Sykes.

10.     On October 16, 2018, Investigators with the KPD-ICAC received consent to examine an iPhone SE with a serial number of DX3VTQ85HTVK belonging to M.D. The phone number of (865) 443-2104, belonging to Sykes, was listed as a contact in the phone. There was also text communication present between Sykes and M.D., indicating that the two had been in contact with one another.

11.     KPD-ICAC investigators interviewed M.D. on October 16, 2018. M.D. admitted during the interview that she knew Sykes and had recently had sex with Sykes. M.D. also stated that she had sent nude photographs of herself to Sykes at his request, but had deleted them from the above-described iPhone SE prior to the interview.

12.     Aggravated statutory rape, a Class D felony, is the sexual penetration of a minor that is at least thirteen (13) but less than eighteen (18) years of age and by a person at least ten (10) years older than the minor victim. Tenn. Code Ann. § 39-13-506(c). "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required. Tenn. Code Ann. § 39-13-501(7).

## CONCLUSION

13.     Therefore, there is probable cause to believe that TYWAN MONTREASE SYKES has violated 18 U.S.C. § 2422(b) by knowingly attempting to use a facility or means of interstate or foreign commerce to induce, entice, or coerce a minor to engage in sexual activity

5

Case 3:18-mj-02178-HBG   Document 1   Filed 10/18/18   Page 6 of 7   PageID #: 6
Case 3:18-mj-02187-HBG   Document 2   Filed 11/01/18   Page 24 of 25   PageID #: 30

for which a person can be charge with a criminal offense, that is, aggravated statutory rape, in

violation of Tenn. Code Ann. § 39-13-506(c).

FURTHER AFFIANT SAYETH NOT.

John M. Williams Jr
Investigator
Knoxville Police Department
Internet Crimes Against Children Task Force

Sworn and subscribed before me

This _18_ day of October 2018.

Honorable H. Bruce Guyton
UNITED STATES MAGISTRATE JUDGE

6